# SHARON DURRANT *v.* BOARD OF EDUCATION OF THE CITY OF HARTFORD ET AL.
## (AC 26437)

Schaller, Bishop and Dupont, Js.

Argued February 23—officially released July 11, 2006

*Paul N. Shapera,* for the appellant (plaintiff).

*Jeffrey G. Schwartz,* with whom was *Christopher Goings,* certified legal intern, for the appellees (defendants).

*Opinion*

DUPONT, J. The plaintiff, Sharon Durrant, appeals from the judgment of the trial court rendered following the granting of the defendants'[1] motion for summary judgment, which was based on governmental immunity under General Statutes § 52-557n (a) (2) (B) and Connecticut common law.[2] The plaintiff claims that the defendants' failure to remove a puddle of water on an outside staircase of a public school attended by her son was an act that subjected her, as an identifiable member of a foreseeable class of persons, to imminent

[1] The defendants are Anthony Amato, the superintendent of Hartford public schools; the board of education of the city of Hartford; Fran DiSiores, the principal of West Middle School, a Hartford public school; and Rick Deschenes, the director of maintenance of West Middle School.

[2] General Statutes § 52-557n (a) (2) (B) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." General Statutes § 52-557n was enacted to codify the common law and to limit governmental immunity. *Conway* v. *Wilton,* 238 Conn. 653, 672, 680 A.2d 242 (1996).

harm, thereby abrogating the defendants' claim of governmental immunity. We reverse the judgment of the trial court and remand the case for further proceedings.

The issue of this appeal is whether the doctrine of governmental immunity should shield the defendants from responsibility for the alleged harm to a parent of a six year old student at a public school, incurred on the school premises, when the parent picked up the student from an after school program conducted under the auspices of the defendant board of education pursuant to General Statutes § 17b-737. The subsidiary question is whether such a parent can be considered a foreseeable victim of imminent harm due to the alleged improper maintenance of the school premises within the precepts of *Burns* v. *Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994), or whether such a parent is not within the class of foreseeable victims as defined in *Prescott* v. *Meriden*, 273 Conn. 759, 873 A.2d 175 (2005). The answers to the questions posed, in view of the pleadings of the parties, and the affidavits submitted with the motion for summary judgment and the documentary opposition thereto, are determinative of whether the defendants were entitled to summary judgment. We conclude that the plaintiff is within a cognizable and narrowly defined class of foreseeable victims who, as a matter of policy, come within the protection of the "evolving expectations of a mature society"; *Burns* v. *Board of Education*, supra, 647;[3] and therefore, overcome the barrier of governmental immunity of a municipality for discretionary acts.

The following factual and procedural history is pertinent to our discussion of the issues on appeal. In her complaint and subsequent affidavit in response to the

---

[3] This phrase was first used by Chief Justice Ellen Peters in *Burns* and later adopted in *Prescott*. See *Burns* v. *Board of Education*, supra, 228 Conn. 647; see also *Prescott* v. *Meriden*, supra, 273 Conn. 764.

motion for summary judgment, the plaintiff alleged that on September 14, 2001, at approximately 4 p.m., she arrived at West Middle School[4] to pick up her six year old son from an after school day care and homework study program conducted by the Boys and Girls Club and the school. As she exited the school, the plaintiff slipped and fell due to a puddle of water that had accumulated on the backdoor stairs, sustaining several injuries. The plaintiff claims that the defendants failed to inspect the stairs reasonably, failed to promulgate policies and procedures that required inspection and removal of standing water and failed to warn the plaintiff and others adequately of the dangerous condition on the stairs.

The defendants denied the allegations of the complaint and raised the special defenses of contributory negligence and the doctrine of governmental immunity, pursuant to § 52-557n and the common law. The plaintiff denied the allegations in the defendants' answer and the assertion that § 52-557n and the common law barred her claims. The defendants filed a motion for summary judgment, pursuant to Practice Book § 17-49 et seq., on the ground that governmental immunity barred the plaintiff's recovery on her complaint. The plaintiff argued that (1) the doctrine of governmental immunity is inapplicable because whether removal of water from a staircase is a ministerial or discretionary act is a question of fact that should be left for the jury's determination and (2) even if removal of water from the staircase is a discretionary act, the plaintiff's cause of action falls within the "identifiable person-imminent harm" exception to governmental immunity.

The court granted the defendants' motion for summary judgment, concluding in its memorandum of decision that it was apparent from the complaint that the

---

[4] West Middle School is an elementary school and is the school in which the plaintiff's son was enrolled.

omissions alleged in the plaintiff's complaint were discretionary acts, thereby permitting the court to consider the motion for summary judgment pursuant to *Segreto* v. *Bristol*, 71 Conn. App. 844, 855, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).[5] The court concluded that the plaintiff's claim that the "identifiable person-imminent harm" exception to the governmental immunity doctrine should govern did not apply.[6]

---

[5] In *Segreto*, we stated that "although the general rule is that a determination as to whether the actions or omissions of a municipality are discretionary or ministerial is a question of fact for the jury, there are cases where it is apparent from the complaint." (Internal quotation marks omitted.) *Segreto* v. *Bristol*, supra, 71 Conn. App. 855. Specifically, we held that the complaint alleged a discretionary activity because "the plaintiff's allegations all relate[d] to whether the [defendant's] design and maintenance of the stairway were reasonable and proper," and that the plaintiff failed to allege "that the [defendant] had some policy or directive in place regarding those duties with which it or its employees had failed to comply." Id., 857. In the present case, the plaintiff alleges that the defendants failed reasonably to inspect the stairs, failed to promulgate policies and procedures that required inspection and removal of standing water and failed to warn the plaintiff and others adequately of the stairs' dangerous condition. As in *Segreto*, the plaintiff's allegations relate to whether the defendants' maintenance of the stairway was reasonable and proper.

Although the plaintiff, in the trial court, claimed that removal of water from a staircase is a ministerial act and, in the alternative, that the question of whether removal of water from a staircase is a ministerial or discretionary act is one of fact that should be left for the jury's determination, the plaintiff does not challenge on appeal the court's conclusion that it was apparent from the complaint that the omissions alleged were discretionary acts, thereby permitting the court to consider the motion for summary judgment pursuant to *Segreto*. As a result, we treat any claim that the defendants owed a ministerial duty as waived by the plaintiff for purposes of the motion for summary judgment. To succeed in her claim of liability, therefore, the plaintiff must fall within one of the exceptions to a municipal employee's qualified immunity for discretionary acts.

[6] For the purposes of this appeal, the plaintiff has stipulated that the only exception to the qualified immunity of a municipal employee for discretionary acts that is relevant to the present case is the exception permitting a tort action in circumstances of perceptible imminent harm to identifiable individuals or a class of foreseeable victims. She claims that, on the facts of this case, she is a member of an identifiable class of foreseeable victims subject to imminent harm for purposes of satisfying the exception to qualified immunity of a municipal employee for discretionary acts.

Addressing the plaintiff's claim that her presence at the school was a necessity and, therefore, that she was an identifiable person or a member of a foreseeable class of victims subject to imminent harm, the court found that the plaintiff failed to plead any facts indicating that this was the case. Citing Practice Book § 10-1, the court concluded that the plaintiff was not entitled to litigate the factual issue of whether her presence was a necessity because she failed to plead any such allegation properly. The court, assuming arguendo that the plaintiff was entitled to litigate the factual issue regarding her presence, concluded, in the alternative, that she did not fall within the exception, as a matter of law. The court found that both the plaintiff and her son were voluntarily present at the school. On the basis of the fact that the plaintiff's attendance was not statutorily compelled, the court concluded that the plaintiff could not fall within the identifiable person-imminent harm exception to governmental immunity as defined in existing Connecticut appellate decisions.

The plaintiff claims that the court improperly granted the defendants' motion for summary judgment because the "[d]efendants' failure to remove a puddle of water from an elementary school staircase was an act that would likely subject an identifiable person or class of persons to imminent harm . . . ." In support of her claim, the plaintiff asserts that, as a parent of children who are denied public transportation to and from school because of the close proximity between the family home and the school, she is a member of a narrow class of parents who may reasonably be expected to be on school grounds to transport their elementary age children home safely.[7]

---

[7] Whether bus transportation should have been provided for the after school program is not an issue in this case. The lack of such transportation is relevant only to whether the presence of a parent was foreseeable for the purposes of escorting the student from the school building safely.

The plaintiff claims that she is statutorily compelled to relinquish protective custody of her children to the school board and its employees. She asserts that, in light of the transportation policy, the only safe and effective manner in which she can reestablish protective custody is to accompany her young child personally from the school building. The plaintiff contends that she, as a parent of a child for whom bus transportation was unavailable, was required to be at the school for the limited purpose of reestablishing her custody and transporting her child out of the building safely. She claims, therefore, that this foreseeability places her in an identifiable class of persons to whom the defendants owed a duty of care.

Addressing the imminent harm element of the exception, the plaintiff asserts that a puddle of water falls within the circumstances of imminent harm as discussed in the existing case law, namely, a dangerous condition limited in duration and geography. In support of this claim, the plaintiff points out that the threat posed by the condition, slipping, is inherent to the defect and that the threat is temporary in nature, as it will diminish and cease as the water evaporates. In terms of the harm element, the plaintiff sees little difference between the icy conditions on school grounds in *Burns* and the condition of school grounds in the present case. As such, she contends that the imminent harm element of the exception is satisfied.

The defendants claim that the plaintiff is not entitled to litigate the issues of whether her presence was required by law or whether the puddle created a threat of imminent harm because she failed to plead or offer evidence properly as to either allegation. In the alternative, the defendants claim that the circumstances of this case do not fall within the identifiable person-imminent harm exception to governmental immunity. The defendants first claim that the plaintiff failed to allege or to

demonstrate that she was required to be on school property. Specifically, the defendants assert that the plaintiff and her son were on school grounds voluntarily. The defendants also contend that the plaintiff failed to show any public policy reason for expanding the parameters of identifiable persons beyond those established by case law.

The court, in its memorandum of decision granting the defendants' motion for summary judgment, rejected the plaintiff's argument that she fell within the identifiable person-imminent harm exception on the basis of its conclusion that the plaintiff did not plead any facts indicating that her presence at the school was mandated by law. On appeal, the defendants request that we invoke this reasoning to affirm the judgment of the trial court.

"Guiding our inquiry as to all of the claims is our well established standard of review of a trial court's decision granting a motion for summary judgment. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Aselton* v. *East Hartford*, 277 Conn. 120, 130, 890 A.2d 1250 (2006). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) *Allfeter* v. *Naugatuck*, 53 Conn. App. 791, 800–801, 732 A.2d 207 (1999). A summary judgment should be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Practice Book § 17-49.

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Aselton* v. *East Hartford*, supra, 277 Conn. 130. The scope of our review of the trial court's decision to grant the defendants' motion for summary judgment is plenary. See id.

The construction of the effect of pleadings is a question of law over which this court exercises plenary review. See *Miller* v. *Egan*, 265 Conn. 301, 308, 828 A.2d 549 (2003). The plaintiff denied that the doctrine of governmental immunity applied. Although the plaintiff argued that she was injured due to the defendants' negligent performance of discretionary acts, she did not specifically allege in her complaint that she was a member of an identifiable class of foreseeable victims subject to an imminent harm. She did, however, allege that she was on the school premises to pick up her child, who was enrolled as a student there.

Practice Book § 17-45 provides in relevant part that a motion for summary judgment "shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . . Any adverse party shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings." The plaintiff, in accordance with the provision allowing her to file an affidavit, did so. In it, she alleged that bus transportation from the school her son attended to her home was not available, that she could not meet her son immediately after school, that her son participated in an after school

day care and homework study program at West Middle School that was presented by the West Middle School and the Boys and Girls Club, that the program provided homework assistance and activities for participating students, that she picked her son up every afternoon, at the after school program and walked him home, that she used the rear staircase along with other parents and children who attended the after school program when she picked him up and that the rear staircase was the closest to the area where the after school program was conducted. The plaintiff also filed a transcript of her deposition, which described with more specificity than her complaint exactly where on the stairs she fell, her footwear and her injuries.

We construe the allegations of the complaint and the affidavit in the plaintiff's favor to determine whether, as a question of law, on the basis of policy considerations and duty, she fits within the identifiable person-imminent harm exception to governmental immunity.[8] The court, in granting the motion for summary judgment, concluded that the plaintiff was not a member of such a class. On appeal, we must decide whether the legal conclusion reached by the court is legally and logically correct, and whether it finds support in the facts.

A municipal employee has a qualified immunity in the performance of a governmental duty, but he may be liable for tortious conduct if he subjects an identifiable person to imminent harm. *Burns* v. *Board of Education*, supra, 228 Conn. 645. The issue in this case is whether

---

[8] Governmental immunity is an affirmative defense and, therefore, the plaintiff was not required to plead facts to allege the absence of that immunity. She needed only to deny, which she did, each and every allegation in the defendants' answer. In response, however, to the defendants' motion for summary judgment, the plaintiff filed an affidavit, pursuant to Practice Book § 17-45, to allege facts from which it can be inferred that she claimed to fall within an exception to governmental immunity.

the identifiable person-imminent harm exception to municipal employees' immunity applies. That exception applies "not only to identifiable individuals but also to narrowly defined classes of foreseeable victims." (Internal quotation marks omitted.) *Colon* v. *Board of Education*, 60 Conn. App. 178, 184, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000). "In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminenc[e] of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim." *Burns* v. *Board of Education*, supra, 647.

"[T]he question of whether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this exception to qualified immunity is ultimately a question of policy for the courts, in that it is in effect a question of duty. . . . This involves a mixture of policy considerations and evolving expectations of a maturing society . . . . Thus, it involves a question of law, over which our scope of review is plenary." (Citation omitted; internal quotation marks omitted.) *Prescott* v. *Meriden*, supra, 273 Conn. 763–64. "A duty to act with reasonable care to prevent harm to a plaintiff which, if violated, may give rise to tort liability is based on a 'special relationship' between the plaintiff and the defendant. . . . A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Citations omitted; internal quotation marks omitted.) *Burns* v. *Board of Education*, supra, 228 Conn. 646.

"Thus far, the only identifiable class of foreseeable victims that [our Supreme Court has] recognized for

these purposes is that of schoolchildren attending public schools during school hours. . . . In determining that such schoolchildren were within such a class, we focused on the following facts: they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they were legally required to attend school rather than being there voluntarily; their parents were thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions." (Citations omitted.) *Prescott* v. *Meriden*, supra, 273 Conn. 764; see also *Purzycki* v. *Fairfield*, 244 Conn. 101, 708 A.2d 937 (1998); *Burns* v. *Board of Education*, supra, 228 Conn. 640; *Bonamico* v. *Middletown*, 49 Conn. App. 605, 713 A.2d 1291 (1998).

Our Supreme Court specifically declined to extend the exception to a parent who fell in the stands while attending his son's high school football game. *Prescott* v. *Meriden*, supra, 273 Conn. 765. In determining that the plaintiff was neither an identifiable individual nor a member of an identifiable class of foreseeable victims, the Supreme Court focused on the fact that the plaintiff's presence at the game was purely voluntary. Id., 764. The court noted that the plaintiff was not entitled to any special consideration of care from the school officials because of his status as a parent and that the plaintiff's status as a parent of a participant in no way narrowly defined his alleged class because, for all intents and purposes, he was no different from any other member of the public attending the game. Id., 764–65. The court rejected the plaintiff's assertion that preventing an injured parent from pursuing a cause of action against municipal employees would have a chilling effect on the public policy of encouraging parental involvement in their children's extracurricular activities. Id., 765–66.

Turning to the present appeal, we first address whether the puddle in the stairwell satisfies the imminent harm element of the identifiable person-imminent harm exception. "Imminent" is defined as something about to materialize of a dangerous nature. Ballentine's Law Dictionary (3d Ed. 1969). The threat of slipping, posed by the condition, is inherent to the defect, a wet floor. The nature of water dictates that the condition is temporary in nature, as it will diminish and cease as the water evaporates. The defect was limited in location to one particular stairwell, and the accident could occur only during a limited time. It was only after the program had concluded that parents of children were on the premises to provide their children with safe departure from the building. The allegedly dangerous condition was limited in duration and geography. See *Doe* v. *Board of Education*, 76 Conn. App. 296, 303, 819 A.2d 289 (2003). Finally, the potential for harm from a fall in a stairwell was significant and foreseeable. We therefore conclude that the plaintiff could meet the requirement of imminent harm.

The plaintiff also must be a member of an identifiable class of foreseeable victims to withstand the defendants' motion for summary judgment. We begin by analyzing the factors enumerated in *Burns*, *Prescott* and *Purzycki*. As a guide to the application of those factors, we first determine whether, if the child instead of the parent fell while leaving the after school program, the defendants would have been able to invoke the doctrine of governmental immunity. If the argument of the defendants were to prevail, the student would also be excluded as a foreseeable victim because his attendance at the program was voluntary, not legally required. It is not a large judicial leap to reason that the six year old student should be allowed to maintain an action against a municipality because, although not legally required to be on the premises after the school

day had concluded, the child was legally present on the premises for the after school program by invitation of the defendants.[9] See the following discussion of General Statutes § 17b-737. We reason that the six year old student would be in an identifiable class of foreseeable victims had he been the one who was allegedly injured.

We next examine the reasoning in *Burns* and *Prescott* to determine whether the parent of that student would fall within or outside the ambit of an identifiable class of foreseeable victims. Unlike the parent in *Prescott*, the presence of the plaintiff at the school was not purely voluntary. She was there to escort her six year old child out of the school building safely because parents have a common-law duty to protect their children. See *State* v. *Miranda*, 274 Conn. 727, 779, 878 A.2d 1118 (2005). The plaintiff's presence at the school to ensure the safe departure of her child was reasonably to be anticipated. She was not part of a large class of persons with no reason to be on school premises or part of a large class of persons with varying reasons to be on school premises. She was not on the premises along with other parents and members of the public to watch a sporting event, but to escort her child out of the building safely, rather than to have him leave the school building alone. As pointed out in *Prescott*, the policy of the law must be informed by the particular facts.[10] *Prescott* v. *Meriden*,

---

[9] We note that *Burns* does not limit its holding to apply only to children attending public school during the regular school day. Although *Burns* decided that such children were a class of foreseeable victims to whom the defendant owed a duty, it did not state that such children were the only class of victims to which the defendant could owe a duty.

[10] In discussing the policy choices of the law, *Prescott* refuses, on its facts, to extend the parameters of *Burns* to allow the parent's lawsuit. *Prescott* recognizes that parents do not choose to attend extracurricular activities of their children on the basis of whether they may recover against school officials, if injured. *Prescott* weighs a parent's desire to be involved in a child's activities against the expansion of *Burns* and finds it wanting as a policy consideration. In terms of policy, we consider it probable that more six year olds leaving the building, having attended an after school program, would be injured if no parent escorted them than if parents accompanied

supra, 273 Conn. 765–66. Here, there is a direct connection between the reason for the plaintiff's presence and the statutes of Connecticut that provide for the public purpose and establishment of after school programs.

General Statutes § 17b-737 is entitled "Grants program to encourage the use of school facilities for child daycare services. Regulations." The statute clearly allows grants to "municipalities" and "boards of education" to "encourage the use of school facilities for the provision of child day care services before and after school. In order to qualify for a grant, a municipality, board of education or child care provider . . . shall agree to provide liability insurance coverage for the program. . . ." General Statutes § 17b-737. "The commissioner [of social services] may utilize available child care subsidies to implement the provisions of this section and encourage association and cooperation with the Head Start program established pursuant to section 10-16n." General Statutes § 17b-737. General Statutes § 10-16n allows the establishment of grant programs to assist local boards of education establishing extended day Head Start programs. General Statutes § 10-16n is part of chapter 164, "Educational Opportunities."

The statutes of Connecticut, therefore, condone and encourage the use of public school facilities for the very purpose that the plaintiff's child was in attendance at West Middle School on the day of the plaintiff's fall. The public policy involved in this case has been established by the legislature through its enactment of § 17b-737. See *Autotote Enterprises, Inc.* v. *State*, 278 Conn.

them out of the building. Thus, if the six year old was part of an identifiable class but his parent was not, more litigation rather than less would ensue.

Significantly, *Prescott* does not exclude parents of students from class status in all circumstances. *Prescott* observed that, *thus far*, in the context of negligence actions against schools, the only recognized class of foreseeable victims is that of schoolchildren attending public schools during school hours. It did not state that schoolchildren attending public schools during school hours were the only class of persons who could avail themselves of the identifiable person-imminent harm exception.

150, 160, 898 A.2d 141 (2006) (stating that legislature speaks on matters of public policy through legislative enactments). The legislature, aware of governmental immunity as provided in § 52-557n, conditioned the receipt of grants under § 17b-737 on municipalities or boards of education obtaining liability insurance coverage. Liability insurance protects an insured from the payment of funds due in the event of an insured's negligence. A "legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Pantanella* v. *Enfield Ford, Inc.*, 65 Conn. App. 46, 55, 782 A.2d 141, cert. denied, 258 Conn. 930, 783 A.2d 1029 (2001). If the legislature believed that § 52-557n exempted those in the category of the defendants from liability arising out of programs established pursuant to § 17b-737, there would be no reason for the legislature to have provided for liability insurance in the latter statute.

"In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including . . . the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim." *Burns* v. *Board of Education*, supra, 228 Conn. 647. The particular victim in this case was identifiable, in view of § 17b-737, coupled with her duty to keep her child safe, as well as the factors enunciated in *Burns, Prescott* and *Purzycki.* She was one of the beneficiaries of the particular duty of the defendants to keep students safe, she was legally on school premises and her child was in the custody of school officials until she arrived to take him out of the building safely.

The scope of the "foreseeable class of victims" test is the "product of the policy considerations that aid the law in determining whether the interests of a particular type are entitled to protection," and these policy considerations are influenced by the "evolving expectations

of a maturing society" that may "change the harm that may reasonably be considered foreseeable." Id. These words of Chief Justice Peters are particularly apt. The harm that may come to a six year old child in an urban setting if permitted to leave a school building, unattended, after a school program endorsed by the defendants has concluded, is reasonably foreseeable. The interest of society in the protection of children and that of parents who have a duty to protect their children from harm, as well as the purpose of § 17b-737, lead us to conclude that, as a matter of policy, the plaintiff is within the foreseeable class of victims who should be allowed to bring a cause of action against the defendants. We hold that the plaintiff, on the facts of this case, is within the limited group of foreseeable victims who, as a matter of policy, as set by the legislature, should be excepted from the doctrine of governmental immunity.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion BISHOP, J., concurred.

SCHALLER, J., dissenting. The majority reverses the decision of the trial court, which applied the general rule of governmental immunity for discretionary acts and barred the plaintiff, Sharon Durrant, from recovering damages from the defendant board of education of the city of Hartford. I respectfully disagree with this result because it expands one of the limited exceptions to this general rule. Because the adult plaintiff was on school property to pick up her child, who was attending an extracurricular, after school day care and homework study program, I believe that the majority has exceeded the firm standards established by our Supreme Court in *Burns* v. *Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994), and more recently in *Prescott* v. *Meriden,*

273 Conn. 759, 873 A.2d 175 (2005). I conclude that the trial court's well reasoned decision properly determined that the plaintiff's recovery is barred by governmental immunity and that she is not an identifiable member of a foreseeable class of persons on the basis of our jurisprudence. Accordingly, I respectfully dissent.

I

Before discussing the specifics of the present case, it is useful to identify the relevant general principles of law. The appropriate starting point is a discussion of governmental immunity. "A municipality itself was generally immune from liability for its tortious acts at common law . . . but its employees faced the same personal tort liability as private individuals. It was once said that as a general rule governmental officers and employees were personally liable for their torts, more or less without exception, even where the governmental unit itself was protected by an immunity. . . . [Our Supreme Court] first adopted a version of qualified official immunity in 1920 in *Wadsworth* v. *Middletown*, 94 Conn. 435, 439, 109 A. 246 (1920) . . . ." (Citations omitted; internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165–66, 544 A.2d 1185 (1988).

In *Wadsworth*, our Supreme Court noted: "Where the discretion has been exercised erroneously but in good faith through an error of judgment, the public official should not be required to pay damages for his acts. The affairs of government cannot be conducted with absolute exactitude, and public officials cannot be expected to act in all cases with certain judgment. Timidity and doubt would govern their performance of public duty if they acted in the consciousness that personal liability might follow, no matter how closely they followed their best discretion. Courts should not too closely scrutinize the acts of discretion on the part

of the public official . . . even though there be an erroneous exercise of discretion, when the good faith of the transaction is manifest and the most that the situation indicates is an error of judgment." *Wadsworth* v. *Middletown*, supra, 94 Conn. 440.

"The general rule is that governments and their agents are immune from liability for acts conducted in performance of their official duties. The common-law doctrine of governmental immunity has been statutorily enacted and is now largely codified in General Statutes § 52-557n. A defendant is entitled to judgment as a matter of law if the duties allegedly breached required the exercise of judgment or discretion, in some measure, by the governmental employee." *Bonamico* v. *Middletown*, 47 Conn. App. 758, 761, 706 A.2d 1386, vacated on other grounds, 49 Conn. App. 605, 713 A.2d 1291 (1998).[1] Simply put, "[a] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 107, 708 A.2d 937 (1998).

Three exceptions to the general rule of governmental immunity have developed in our law on the basis of "*compelling* policy considerations." (Emphasis added; internal quotation marks omitted.) Id., 120 (*Callahan, C. J.*, dissenting). "The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though

---

[1] "The Supreme Court remanded the [*Bonamico*] case to this court for reconsideration in light of *Purzycki* v. *Fairfield*, supra, 244 Conn. [101]. *Bonamico* v. *Middletown*, 244 Conn. 923, 714 A.2d 8 (1998). On remand, this court vacated its previous decision, reasoning that *Purzycki* controlled and required a result contrary to that previously reached. *Bonamico* v. *Middletown*, 49 Conn. App. 605, 606, 713 A.2d 1291 (1998)." *Colon* v. *Board of Education*, 60 Conn. App. 178, 187, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000).

the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Citations omitted.) *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). The identifiable person-imminent harm exception applies to narrowly defined classes of foreseeable victims as well as identifiable individuals. *Colon* v. *Board of Education*, 60 Conn. App. 178, 184, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000); see also *Burns* v. *Board of Education*, supra, 228 Conn. 646; *DeConti* v. *McGlone*, 88 Conn. App. 270, 273, 869 A.2d 271, cert. denied, 273 Conn. 940, 875 A.2d 42 (2005); *Gajewski* v. *Pavelo*, 36 Conn. App. 601, 620, 652 A.2d 509 (1994), aff'd, 236 Conn. 27, 670 A.2d 318 (1996).

## II

In order to explain my disagreement, it is necessary to trace the path of relevant case law pertaining to the "member of an identifiable class" exception to the rule granting governmental immunity to municipal employees for discretionary acts in the school setting. This journey begins with *Burns*, decided in 1994,[2] and concludes with *Prescott*. The plaintiff in *Burns* was a schoolchild who was required by statute to attend the school where he sustained an injury during school hours on an icy courtyard. *Burns* v. *Board of Education*, supra, 228 Conn. 650. Our Supreme Court decided that the child was one of a class of foreseeable victims to

---

[2] Our Supreme Court previously had recognized the public duty of a public official to protect an identifiable person from imminent harm. See *Sestito* v. *Groton*, 178 Conn. 520, 528, 423 A.2d 165 (1979); see also *Shore* v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982).

whom the defendant superintendent owed a duty of protection. Id. The defense of governmental immunity did not apply under the circumstances in which parents are statutorily compelled to relinquish protective custody of their children to a school board and its employees. Id., 649–51. Central to the holding in *Burns* was the statutory requirement that the plaintiff attend school, coupled with his entitlement to a public education as guaranteed by article eighth, § 1, of the Connecticut constitution. Id., 649.

"In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm. (Citations omitted.) Id., 647–48.

In *Purzycki* v. *Fairfield*, supra, 244 Conn. 103–104, the minor plaintiff suffered injuries when he was tripped by another student in an unmonitored school hallway. In discussing the applicable exception to governmental immunity, our Supreme Court reiterated that "*schoolchildren who are statutorily compelled to attend school, during school hours on school days*, can be an identifiable class of victims." (Emphasis added.) Id., 109. The court concluded that the "limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from

the lunchroom to traverse an unsupervised hallway on their way to recess" constituted sufficient evidence for a jury to find imminent harm. Id., 110.

In *Colon* v. *Board of Education*, supra, 60 Conn. App. 177–80, a teacher negligently opened a door and struck the minor plaintiff in the head and facial area. The trial court rendered summary judgment in favor of the defendant on the ground that the opening of the door was a discretionary act and that none of the exceptions to governmental immunity applied. Id., 180. This court considered the "imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim," and concluded that *schoolchildren* are members of an identifiable class of foreseeable victims because they are statutorily required to attend school. Id., 184. In reversing the judgment of the trial court, we concluded that the teacher opened the door in a negligent manner, the danger was limited to a specific time and location, and there was a potential for significant injury. Id., 187–88.

We reached a different conclusion in *Doe* v. *Board of Education*, 76 Conn. App. 296, 819 A.2d 289 (2003). In that case, three male students accosted and sexually assaulted the twelve year old plaintiff at school. Id., 297. The trial court struck the plaintiff's complaint on the ground of governmental immunity. Id., 298. In discussing the exceptions to the rule of governmental immunity, we again emphasized the importance of the fact that, as a school-aged child, the plaintiff was statutorily required to attend school. Id., 301. We also stated that this exception "has *received very limited recognition in this state.*" (Emphasis added; internal quotation marks omitted.) Id., 302. We affirmed the judgment of the trial court on the ground that, unlike *Burns* and *Purzycki*, the alleged danger was not limited to a particular time or place within the school. Id., 304–306.

Finally, in *Prescott*, our Supreme Court refused the adult plaintiff's invitation to enlarge the category of foreseeable victims, emphasizing that the only class of foreseeable victims that we have recognized for these purposes is that of schoolchildren attending public schools during school hours. *Prescott* v. *Meriden*, supra, 273 Conn. 764. The unsuccessful plaintiff in *Prescott*, which was decided in 2005, was the parent of a high school student-athlete. Id., 761. The plaintiff, attending his son's football game as a spectator, was on school grounds after school hours. Id., 761–62. Our Supreme Court, in applying the *Burns* doctrine, first concluded that the plaintiff, as the parent of a student, was not entitled to any special consideration in the face of dangerous conditions. Id., 764. More specifically, the court stated that parents are not the intended beneficiaries of any particular duty of care imposed by statute, nor are they legally required to attend school. Id. The court then advanced three other considerations that militated in favor of the defendants. First, the plaintiff's attendance at the game was purely voluntary. Id. In other words, he was no different from any other member of the general public. Second, the court expressly stated that, in this particular legal context, parents are different from children in the context of determining the applicability of an exception to governmental immunity. Id., 764–65. Third, to allow this plaintiff to qualify for the exception would "mean that all spectators at a public municipal event would constitute a class of foreseeable victims for these purposes, *thus making the exception so broad that it would threaten to swallow the rule.*" (Emphasis added.) Id., 765. The court went on to say that the public policy of promoting parental involvement in a child's education did not justify extending the duty of care abrogating governmental immunity to parents attending school sponsored activities. Id., 766.

*Prescott* reaffirmed the factors deemed important by the *Burns* court. The *Prescott* court did not suggest areas in which the exception should be expanded, nor did it provide any test for expanding the exception. Moreover, our Supreme Court did not give any indication that we should expand the doctrine on the basis of some undefined policy consideration. Because *Prescott* rejected any extension of the *Burns* doctrine on exceptions to governmental immunity under these circumstances and, in fact, confirmed its viability, we are left with *Burns* as the sole guide for future situations. The fact that *Prescott* addressed a scenario that, if recognized, would have expanded *Burns*, does not cause the original *Burns* doctrine to be expanded.

The following common features can be distilled from an analysis of these cases. First, the "identifiable class of foreseeable victims" is a narrow exception to the general rule entitling municipal employees to governmental immunity for discretionary acts. Second, the appellate courts of this state primarily have applied this exception when the plaintiff has been a school-aged child.[3] Children are required by statute to attend school. Moreover, due to their age and inexperience, children need to be safeguarded from their propensity to disregard dangerous conditions and circumstances. *Neal* v. *Shiels, Inc.*, 166 Conn. 3, 11, 347 A.2d 102 (1974); see generally *LePage* v. *Horne*, 262 Conn. 116, 124, 809 A.2d 505 (2002); *State* v. *Guess*, 244 Conn. 761, 776, 715 A.2d 643 (1998). Municipalities, therefore, through the school board and school officials, specifically are required to care for and protect the children during school hours, and public policy favors allowing recovery for an injured child when this obligation is performed negligently.

---

[3] See, e.g., *DeConti* v. *McGlone*, supra, 88 Conn. App. 271 (exception did not apply where tree fell, damaged motor vehicle on street); cf. *Tryon* v. *North Branford*, 58 Conn. App. 702, 710, 755 A.2d 317 (2000) (fellow firefighter considered member of identifiable class).

## III

I now apply the relevant law to the facts of the present case. The claimant in this case is not the six year old *schoolchild*, but, rather, the child's parent. In her complaint, the adult *plaintiff* alleged that she sustained injuries in a fall caused by a puddle of water at the bottom of a set of exterior steps of a city school. It is noteworthy that the crucial concerns involving schoolchildren, initially identified in *Burns*, are absent in the present case.

The majority, nonetheless, approaches this case from the standpoint of the plaintiff's child, hypothesizing that the *child* would be a member of the *Burns* class. At the outset, because this issue is not before us, in my view, it is improper for us to postulate an answer to that question. Any discussion of this issue constitutes, at best, dicta and, at worst, an advisory opinion. "This court does not render advisory opinions. . . . As our Supreme Court explained more than a century ago, [s]uch action on our part would be clearly extra-judicial. It would be a case purely of advice and not of judgment. . . . Our action being extra-judicial . . . it cannot be of any binding character whatever. No Judge of the Supreme or Superior Court, in any case hereafter before him, would be bound by our opinion. We ourselves [would] not be bound by it. Being merely advice, it would be in contemplation of law . . . . *Reply of the Judges*, 33 Conn. 586, 586–87 (1867)." (Citations omitted; internal quotation marks omitted.) *National Amusements, Inc.* v. *East Windsor*, 84 Conn. App. 473, 485, 854 A.2d 58 (2004).

Furthermore, unlike my colleagues in the majority, I am not at all persuaded that "[i]t is not a large judicial leap to reason that the six year old student should be allowed to maintain an action against a municipality because, although not legally required to be on the

premises after the school day had concluded, the child was legally present on the premises for the after school program by invitation from the defendants." *Burns* and *Prescott* limited the exception to schoolchildren attending school as required by law. The plaintiff's child was attending a purely voluntary after school program. The child participated in the program on a voluntary basis and attended on the day in question on a voluntary basis.[4] The majority's cursory resolution of this issue, in my view, suggests an unwarranted expansion of liability for all events that take place on school grounds. For example, would *Burns* apply if a child is injured while performing in a school event? What if a child is injured while playing football, or attending a school football game, as the adult plaintiff did in *Prescott*? These hypotheticals are meant to suggest my fundamental concerns with the unsupported expansion of the scope of this exception to governmental immunity.

The majority reasons that "the six year old student would be in an identifiable class of foreseeable victims had he been the one who was allegedly injured." This apparently facilitates the "judicial leap" from *Burns* to the adult plaintiff in the present case. In my view, the gap between *Burns* and the present case is vast. By assuming that the six year old student would be within the "class of foreseeable victims, the majority relies on a "stepping stone" for its "judicial leap." Simply stated, I do not believe that such a "stepping stone" should be found in this case. Additionally, in making this "judicial leap," the majority imports subtle changes in the way the *Burns* test is applied. The majority states that, contrary to the present factual setting, the presence of the plaintiff in *Prescott* was *"not purely voluntary."* (Emphasis added). The *Burns* court, however, focused

---

[4] If the child's presence is purely voluntary, can the parent's presence be deemed mandatory?

on the requirement that parents are *"statutorily compelled* to relinquish protective custody of their children to a school board and [therefore] its employees, the superintendent [had] the duty to protect the pupils in the board's custody from dangers that may reasonably be anticipated." (Emphasis added.) *Burns* v. *Board of Education,* supra, 228 Conn. 649. Presence that is "not purely voluntary" is vastly different from presence that results from statutory compulsion. The majority, however, appears to equate the two.

I also note that just as an extension favoring the *Prescott* plaintiff would have enlarged the class to include nonparental members of the public, a holding in the present case would do the same. How could an expansion in the present case not logically include nonparents who nevertheless are related to or have a social connection with the child? What if an older sibling slipped at the school while escorting the child? A family friend? An employee? Anyone entering the school premises as a designee of parents might well have to be included in the class of persons. As a result, the *exceptions could swallow the rule,* one of the main concerns of our Supreme Court in *Prescott.*

Just as the trial court in the present case accurately followed the *Burns* guidelines, so should we follow those guidelines. Because the *Prescott* case was decided less than one year ago, I can think of no reasonable basis on which we can determine, on the basis of "evolving expectations," that we should enlarge the class of persons to whom school officials owe duties of care beyond those previously specified. If our Supreme Court wants to expand the class of protected persons to persons in the class of the plaintiff in this case, it has authority to do so. As an intermediate appellate court, we are bound to follow the mandate of *Burns* in the absence of any language opening the door to expanding the class. To expand the exception to governmental immunity in this

case, however, appears extremely dubious in light of *Prescott*.[5]

The facts of the present case, while not identical, are substantially similar to those in *Prescott*, in which our Supreme Court soundly rejected the plaintiff's claim. Both cases involve parents of schoolchildren who were participating in activities on school property after the school day had concluded. Both parents were present on school property by invitation or, at least, permission of the school officials. The *Prescott* plaintiff did not argue that he was required to attend the event. The plaintiff in the present case does present that argument in her appeal. As the trial court correctly noted, however, her pleadings failed to include any allegation that her presence was mandated. The first mention of that argument was in her memorandum of law submitted in connection with the summary judgment proceeding. Because *Burns* and its progeny, including *Prescott*, clearly rely on the statutory duty to attend school, and because no such fact is part of the pleadings in this case, the trial court was correct, and its judgment should not be reversed because the court decided as it did in strict adherence to the dictates of our Supreme Court.[6]

The majority opinion approves the plaintiff's reasoning that her presence at the school was not voluntary because, as a parent, she was obligated to accompany her child from school to home. The majority goes on to explain that her legal duties as a parent required her to escort her child home. While it is true that parents

[5] Although *Prescott* may not have expressly excluded the parents of students from class status in all circumstances, it did follow the principle that exceptions to governmental immunity are narrowly drawn in this state.

[6] I also note that the majority excuses the plaintiff from expressly pleading a duty to be present, and concludes that is what the plaintiff pleaded. I believe the trial court was correct when it concluded that she could not raise on summary judgment an issue of fact that she had failed to raise in any pleading.

have legal duties to care for children, those "duties" do not constitute the kind of mandatory, i.e., statutory, duties addressed by our Supreme Court in determining what individuals are part of an identifiable class of foreseeable persons. While no one would consider parental duties *voluntary* in the ordinary sense of the word, that does not mean that everything a parent does to care for a child is *required by law*. No statute or legal doctrine required the plaintiff to enroll her child in this after school program, nor did any law require her to allow her child to remain at school on that particular day or to pick up her child *personally* on this or any given day. All those actions were voluntary, notwithstanding the general parental duties of care. None of her voluntary choices should impose an additional duty of care on school authorities pursuant to the *Burns* standards.

The "evolving expectations of a mature society" language used in *Burns* does not justify this court, on the basis of its personal views of social policy, to enlarge the class of persons entitled to circumvent the protective bar of immunity that enables governmental entities to carry out their discretionary activities without liability concerns.[7]

In *Burns,* our Supreme Court held that the "network of statutory and constitutional provisions" require school officials to bear the responsibility for "failing to act to prevent the risk of imminent harm to school children as an identifiable class of beneficiaries" and "[a]t least during school hours on school days" when parents are required to relinquish custody of their children, the school has a duty to protect children from dangers that may reasonably be anticipated. *Burns* v.

---

[7] "One purpose of governmental immunity is to avoid injecting monetary claims of the public alleging harm arising out of the day-to-day operation of discretionary municipal functions." *Tryon* v. *North Branford*, supra, 58 Conn. App. 723.

*Board of Education,* supra, 228 Conn. 649. In *Prescott,*
that duty was not extended to parents because adults
do not require such protection, nor are they required
to be on school grounds, in the same manner that chil-
dren are.[8] I do not believe, therefore, that we should
look to the "evolving standards of society" in light of
this precedent. Because our Supreme Court has created
the framework to guide both this court and the Superior
Court on this issue, our function is to employ those

---

[8] The majority refers to General Statutes § 17b-737 and argues that it
"clearly allows grants to 'municipalities' and 'boards of education' in order
to 'encourage the use of school facilities for the provision of child day care
services before and after school.'" The majority continues in its reasoning
and states that the enactment of § 17b-737 indicates a legislative public
policy in favor of allowing recovery for parents who pick their children up
from school after participating in child care services before or after school.
I do not understand how § 17b-737 requires or compels the plaintiff's pres-
ence at her child's school. I also disagree that § 17b-737 indicates legislative
intent to expand the holdings of *Burns* and its progeny. The liability insur-
ance requirement serves to protect against various types of risks associated
with operating child care services. For example, such insurance would
provide coverage if a child were injured and came within one of the recog-
nized exceptions to governmental immunity. I cannot see how a general
requirement of insurance for child care services indicates an implicit, sub
silentio legislative intent to expand *Burns.*

I note that our Supreme Court has stated: "[W]hen a statute is in derogation
of common law or creates a liability where formerly none existed, it should
receive a strict construction and is not to be extended, modified, repealed
or enlarged in its scope by the mechanics of [statutory] construction. . . .
In determining whether or not a statute abrogates or modifies a common
law rule the construction must be strict, and the operation of a statute in
derogation of the common law is to be limited to matters clearly brought
within its scope. . . . This court has previously stated that [a] municipality
itself was generally immune from liability for its tortious acts at common
law . . . . We have also long recognized that, [u]nder our rule, the principle
of governmental immunity extends to the construction and maintenance of
fire equipment as well as to its use for fire protection. . . . We have also
recognized, however, that governmental immunity may be abrogated by
statute. . . . Thus, the general rule developed in our case law is that a
municipality is immune from liability for negligence unless the legislature
has enacted a statute abrogating that immunity." (Citation omitted; internal
quotation marks omitted.) *Spears* v. *Garcia,* 263 Conn. 22, 28, 818 A.2d 37
(2003). I do not believe that the issue presented in this case is clearly within
the scope of § 17b-737.

guidelines in the present factual setting by applying *Burns* and *Prescott*.

It is worth examining the "evolving expectations" language on which the majority relies so heavily. That phrase was quoted from a Massachusetts case, *Irwin v. Ware*, 392 Mass. 745, 756, 467 N.E.2d 1292 (1984), in the following context: "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . Foreseeability in this context is a flexible concept, and may be supported by reasonable reliance, impeding others who might seek to render aid, statutory duties, property ownership or other factors. See [id., 756]. Moreover, just as the doctrine of governmental immunity and its exceptions are the product of the policy considerations that aid the law in determining whether the interests of a particular type are entitled to protection . . . so may evolving expectations of a maturing society change the harm that may reasonably be considered foreseeable. [Id.], 756–57." (Citations omitted; internal quotation marks omitted.) *Burns* v. *Board of Education,* supra, 228 Conn. 647. Chief Justice Peters clearly used the "evolving expectations" language in speaking of the "harm that may reasonably be considered foreseeable." The language in question found its origin in *Irwin* in a similar context. *Irwin* involved an action by an injured motorist against a town under the Massachusetts Tort Claims Act. The issue was whether a town police officer's duty to remove an intoxicated operator of a motor vehicle from a highway was ministerial or discretionary for purposes of exemption from liability. The Supreme Judicial Court of Massachusetts determined that it was not discretionary. In addressing the special relationship between the town and the injured plaintiff, the court said: "It has been said that such foreseeability can be based on reasonable reliance by the plaintiff, impeding other persons who might seek to render aid, statutory

duties, property ownership or some other basis. As the harm which safely may be considered foreseeable to the defendant changes with the evolving expectations of a maturing society, so change the 'special relationships' upon which the common law will base tort liability for the failure to take affirmative action with reasonable care." *Irwin* v. *Ware*, supra, 756–57.

It is evident to me that our Supreme Court, in using the language from the Massachusetts Supreme Judicial Court in both *Burns* and *Prescott* was not extending an invitation for us to create and apply in the course of an appeal without an evidentiary basis, expanded duties and relationships that we might prefer to recognize on the basis of our individual perceptions of "evolving expectations of a maturing society . . . ." Id., 756.

I understand that, at first blush, it may seem compelling to adopt a policy that allows this plaintiff to recover damages for her alleged injuries. When the purpose for doing so is put in terms of avoiding "the harm that may come to a six year old child in an urban setting if permitted to leave a school building unattended after a school program," the action seems even more persuasive. When the policy is urged as an appropriate action of a "maturing society," further force is added. It is difficult, however, for me to envision such a policy being rationally limited to situations arising in urban settings. If such a policy were to be adopted, it would likely involve expanding the exception to immunity, not only to virtually all schoolchildren—in urban and nonurban settings alike—attending *all* extracurricular programs, but also to individuals other than parents on school premises for designated purposes. Truly, the exception "would threaten to swallow the rule." *Prescott* v. *Meriden*, supra, 273 Conn. 765. Despite whatever momentary appeal such a policy might have, the consequences for school boards and municipalities would likely be enormous. If such a policy is to be considered,

it is not our place to do so. We are obligated to follow the clear and unambiguous guidelines established by our Supreme Court in *Burns* and its progeny.

Finally, I note that the majority concludes by stating: "The scope of the 'foreseeable class of victims' test is the 'product of the policy considerations that aid the law in determining whether the interests of a particular type are entitled to protection,' and these policy considerations are influenced by the 'evolving expectations of a maturing society' that may 'change the harm that may reasonably be considered foreseeable.' " Supreme Court precedent has made it unmistakably clear that such is not the law at this time. Our obligation is to follow the well defined standards established in *Burns* and *Prescott*, in which our Supreme Court declined to expand the exception. Those standards, I believe, require that we affirm the judgment of the trial court.

For the foregoing reasons, I respectfully dissent.