SHARON DURRANT *v.* BOARD OF EDUCATION OF
THE CITY OF HARTFORD ET AL.
(SC 17733)

Rogers, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.*

---

* This case originally was argued before a panel of this court consisting of Justices Borden, Norcott, Katz, Palmer and Vertefeuille. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Chief Justice Rogers and Justice

Zarella were added to the panel, and they have read the record, briefs and transcript of the oral argument.

The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued May 15—officially released October 2, 2007

*Kenneth J. Bartschi*, with whom were *Wesley W. Horton* and, on the brief, *Jeffrey G. Schwartz*, for the appellants (defendants).

*Paul N. Shapera*, for the appellee (plaintiff).

*Kelly D. Balser* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Marvin P. Bellis* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

KATZ, J. The plaintiff, Sharon Durrant, appealed from the judgment of the trial court rendered following the

granting of the motion for summary judgment filed by the defendants, the board of education (board) of the city of Hartford and certain city of Hartford employees,[1] which was based on governmental immunity under General Statutes § 52-557n (a) (2) (B) and Connecticut common law.[2] The plaintiff claimed that the defendants' failure to remove a puddle of water on an outside staircase of a public school attended by her child was an act that had subjected her, as an identifiable member of a foreseeable class of persons, to imminent harm, thereby abrogating the defendants' claim of governmental immunity. In a divided opinion, the Appellate Court reversed the judgment of the trial court and remanded the case for further proceedings, concluding that the doctrine of governmental immunity did not apply to shield the defendants from responsibility for the alleged injuries to the plaintiff, which she had sustained on public school premises when picking up her six year old child from an after school program conducted under the auspices of the board pursuant to General Statutes § 17b-737.[3] *Durrant* v. *Board of Education*, 96 Conn.

---

[1] The individual defendants are: Anthony Amato, a former superintendent of the city of Hartford's public schools; Fran DiSiores, the principal of West Middle School, a Hartford public school; and Rick Deschenes, the director of maintenance of West Middle School.

[2] General Statutes § 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." The court has explained that, as a general matter, § 52-557n was enacted to codify the common law and to limit the scope of governmental immunity. *Conway* v. *Wilton*, 238 Conn. 653, 672, 680 A.2d 242 (1996).

[3] General Statutes § 17b-737 provides: "The Commissioner of Social Services shall establish a program, within available appropriations, to provide grants to municipalities, boards of education and child care providers to encourage the use of school facilities for the provision of child day care services before and after school. In order to qualify for a grant, a municipality, board of education or child care provider shall guarantee the availability of a school site which meets the standards set by the Department of Public Health in regulations adopted under sections 19a-77, 19a-79, 19a-80 and 19a-82 to 19a-87a, inclusive, and shall agree to provide liability insurance

App. 456, 900 A.2d 608 (2006). The Appellate Court majority determined that, due to the allegedly improper maintenance of the school premises, the plaintiff was within a cognizable and narrowly defined class of foreseeable victims within the precepts of *Burns* v. *Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994), and, therefore, overcame the barrier of governmental immunity of a municipality for discretionary acts.[4] *Durrant*

coverage for the program. Grant funds shall be used by the municipality, board of education or child care provider for the maintenance and utility costs directly attributable to the use of the school facility for the day care program, for related transportation costs and for the portion of the municipality, board of education or child care provider liability insurance cost and other operational costs directly attributable to the day care program. The municipality or board of education may contract with a child day care provider for the program. The Commissioner of Social Services may adopt regulations, in accordance with the provisions of chapter 54, for purposes of this section. The commissioner may utilize available child care subsidies to implement the provisions of this section and encourage association and cooperation with the Head Start program established pursuant to section 10-16n."

[4] "Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. . . . The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees." (Citations omitted.) *Burns* v. *Board of Education*, supra, 228 Conn. 645. Governmental immunity in such cases depends on whether the act in question involves a ministerial or discretionary act. "[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act . . . . The word ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) Id. "The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Citations omitted.) *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). Only the first exception, which this court addressed more specifically in *Burns* and its progeny, is at issue in this appeal.

v. *Board of Education*, supra, 472. Thereafter, the defendants petitioned for certification to appeal to this court. We granted their petition, limited to the following question: "Did the Appellate Court properly conclude that the plaintiff was a member of an identifiable class of persons subject to imminent harm?" *Durrant* v. *Board of Education*, 280 Conn. 915, 908 A.2d 536 (2006). We answer that question in the negative and, accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following undisputed facts and procedural history pertinent to our discussion of the issue on appeal. "In her complaint and subsequent affidavit in response to the motion for summary judgment, the plaintiff alleged that on September 14, 2001, at approximately 4 p.m., she arrived at West Middle School [in Hartford (school)] to pick up her six year old son from an after school day care and homework study program conducted by the Boys and Girls Club and the school. As she exited the school, the plaintiff slipped and fell due to a puddle of water that had accumulated on the backdoor stairs, sustaining several injuries. The plaintiff claims that the defendants failed to inspect the stairs reasonably, failed to promulgate policies and procedures that required inspection and removal of standing water and failed to warn the plaintiff and others adequately of the dangerous condition on the stairs.

"The defendants denied the allegations of the complaint and raised the special defenses of contributory negligence and the doctrine of governmental immunity, pursuant to § 52-557n and the common law. The plaintiff denied the allegations in the defendants' answer and the assertion that § 52-557n and the common law barred her claims. The defendants filed a motion for summary judgment, pursuant to Practice Book § 17-49 et seq., on the ground that governmental immunity barred the plaintiff's recovery on her complaint. The plaintiff

argued that (1) the doctrine of governmental immunity is inapplicable because whether removal of water from a staircase is a ministerial or discretionary act is a question of fact that should be left for the jury's determination and (2) even if removal of water from the staircase is a discretionary act, the plaintiff's cause of action falls within the 'identifiable person-imminent harm' exception to governmental immunity.

"The court granted the defendants' motion for summary judgment, concluding in its memorandum of decision that it was apparent from the complaint that the omissions alleged in the plaintiff's complaint were discretionary acts, thereby permitting the court to consider the motion for summary judgment pursuant to *Segreto* v. *Bristol*, 71 Conn. App. 844, 855, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).[5] The court concluded that the plaintiff's claim that the 'identifiable person-imminent harm' exception to the governmental immunity doctrine should govern did not apply.[6]

"Addressing the plaintiff's claim that her presence at the school was a necessity and, therefore, that she was an identifiable person or a member of a foreseeable class of victims subject to imminent harm, the court found that the plaintiff failed to plead any facts indicat-

---

[5] "In *Segreto*, [the Appellate Court] stated that 'although the general rule is that a determination as to whether the actions or omissions of a municipality are discretionary or ministerial is a question of fact for the jury, there are cases where it is apparent from the complaint.' . . . *Segreto* v. *Bristol*, supra, 71 Conn. App. 855." *Durrant* v. *Board of Education*, supra, 96 Conn. App. 460 n.5.

[6] "For the purposes of this appeal, the plaintiff has stipulated that the only exception to the qualified immunity of a municipal employee for discretionary acts that is relevant to the present case is the exception permitting a tort action in circumstances of perceptible imminent harm to identifiable individuals or a class of foreseeable victims. She claims that, on the facts of this case, she is a member of an identifiable class of foreseeable victims subject to imminent harm for purposes of satisfying the exception to qualified immunity of a municipal employee for discretionary acts." *Durrant* v. *Board of Education*, supra, 96 Conn. App. 460 n.6.

ing that this was the case. Citing Practice Book § 10-1, the court concluded that the plaintiff was not entitled to litigate the factual issue of whether her presence was a necessity because she failed to plead any such allegation properly. The court, assuming arguendo that the plaintiff was entitled to litigate the factual issue regarding her presence, concluded, in the alternative, that she did not fall within the exception, as a matter of law. The court found that both the plaintiff and her son were voluntarily present at the school. On the basis of the fact that the plaintiff's attendance was not statutorily compelled, the court concluded that the plaintiff could not fall within the identifiable person-imminent harm exception to governmental immunity as defined in existing Connecticut appellate decisions." *Durrant* v. *Board of Education,* supra, 96 Conn. App. 458–61.

In deciding that the trial court improperly had concluded that the identifiable person-imminent harm exception to municipal employees' immunity did not apply to the present case, the Appellate Court majority predicated its decision on several determinations. First, the court determined that the puddle in the stairwell satisfied the imminent harm element of the exception because the allegedly dangerous condition was limited in duration and location. Id., 468. Second, turning to the identifiable person element, the court reasoned that, had the plaintiff's child been injured in the fall, he would have been allowed to maintain an action against a municipality "because, although not legally required to be on the premises after the school day had concluded, the child was legally present on the premises for the after school program by invitation of the defendants. . . . General Statutes § 17b-737. [Accordingly] . . . the six year old student would be in an identifiable class of foreseeable victims had he been the one who was allegedly injured." *Durrant* v. *Board of Education,* supra, 96 Conn. App. 468–69. Building on that reasoning,

the Appellate Court concluded that, because the plaintiff "was there to escort her six year old child out of the school building safely" in the exercise of her common-law duty to protect her child, her "presence at the school to ensure the safe departure of her child was reasonably to be anticipated." Id., 469. Because our statutes "condone and encourage the use of public school facilities for the very purpose that the plaintiff's child was in attendance at [the school] on the day of the plaintiff's fall"; id., 470; the Appellate Court determined that the plaintiff was one of the beneficiaries of the particular duty of the defendants to keep students safe. Id., 471. Finally, in view of the fact that "[t]he scope of the 'foreseeable class of victims' test is the 'product of the policy considerations that aid the law in determining whether the interests of a particular type are entitled to protection' "; id.; the court concluded that the plaintiff fell within the scope of the "foreseeable class of victims" test. Id., 472. In his dissent, then Appellate Court Judge Schaller concluded that, because "the adult plaintiff was on school property to pick up her child, who was attending an extracurricular, after school day care and homework study program"; id.; the majority improperly "exceeded the firm standards established by [this court] in *Burns* v. *Board of Education*, [supra, 228 Conn. 640], and more recently in *Prescott* v. *Meriden*, 273 Conn. 759, 873 A.2d 175 (2005)," when it determined that the plaintiff was an identifiable member of a foreseeable class of persons. *Durrant* v. *Board of Education*, supra, 472–73 (*Schaller, J.*, dissenting). This certified appeal followed.

Mindful of the well settled standard regarding the scope of our review of a trial court's decision to render summary judgment,[7] we turn to the narrow issue in

[7] "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light

dispute in this case. The plaintiff concedes that the defendants' conduct was discretionary, and therefore, she can prevail only if she falls within one of the delineated exceptions to governmental immunity. See footnote 4 of this opinion. The only relevant exception is that the circumstances would "make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Citations omitted.) *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). "[This court has] construed this exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims. See *Sestito* v. *Groton*, 178 Conn. 520, 527–28, 423 A.2d 165 (1979)." *Burns* v. *Board of Education*, supra, 228 Conn. 646. The plaintiff does not claim to be an identifiable individual for purposes of the exception to the governmental immunity doctrine. Therefore, the plaintiff may prevail only if she comes within an identifiable class of foreseeable victims. She contends that, as a parent of a six year old child who picked her child up from an after school program conducted under the auspices of the board pursuant to § 17b-737, she was a member of an identifiable class of foreseeable victims subject to imminent harm for purposes of satisfying that exception to qualified immunity of a municipal employee for discretionary acts.

We begin with the understanding that the question of whether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this narrowly drawn exception to qualified immunity ultimately is a question of law for the courts, in that it is in effect

most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 733, 873 A.2d 898 (2005).

a question of whether to impose a duty of care. *Purzycki* v. *Fairfield*, 244 Conn. 101, 108 n.5, 708 A.2d 937 (1998). "In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm." (Citations omitted.) *Burns* v. *Board of Education*, supra, 228 Conn. 647–48. In considering these factors to determine whether the defendants owed a duty of care to the plaintiff, we begin this process with *Burns* and conclude with *Prescott* v. *Meriden*, supra, 273 Conn. 759, as aptly summarized by Judge Schaller in his Appellate Court dissenting opinion in the present case.

"The plaintiff in *Burns* was a schoolchild who was required by statute to attend the school where he sustained an injury during school hours on an icy courtyard. *Burns* v. *Board of Education*, supra, 228 Conn. 650. [This court] decided that the child was one of a class of foreseeable victims to whom the defendant superintendent owed a duty of protection. Id. The defense of governmental immunity did not apply under the circumstances in which parents are statutorily compelled to relinquish protective custody of their children to a school board and its employees. Id., 649–51. Central to the holding in *Burns* was the statutory requirement that the plaintiff attend school, coupled with his entitle-

ment to a public education as guaranteed by article eighth, § 1, of the Connecticut constitution. Id., 649. . . .

"In *Purzycki* v. *Fairfield*, supra, 244 Conn. 103–104, the minor plaintiff suffered injuries when he was tripped by another student in an unmonitored school hallway. In discussing the applicable exception to governmental immunity, [the court] reiterated that schoolchildren who are statutorily *compelled* to attend school, during school hours on school days, can be an identifiable class of victims. . . . Id., 109. The court concluded that the limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess constituted sufficient evidence for a jury to find imminent harm. Id., 110." (Citations omitted; emphasis added; internal quotation marks omitted.) *Durrant* v. *Board of Education*, supra, 96 Conn. App. 475–77 (*Schaller, J.*, dissenting).

"Finally, in *Prescott*, [the court] refused the adult plaintiff's invitation to enlarge the category of foreseeable victims, emphasizing that the only class of foreseeable victims that we have recognized for these purposes is that of schoolchildren attending public schools during school hours. *Prescott* v. *Meriden*, supra, 273 Conn. 764. The unsuccessful plaintiff in *Prescott*, which was decided in 2005, was the parent of a high school student-athlete. Id., 761. The plaintiff, attending his son's football game as a spectator, was on school grounds after school hours. Id., 761–62. [The court], in applying the *Burns* doctrine, first concluded that the plaintiff, as the parent of a student, was not entitled to any special consideration in the face of dangerous conditions. Id., 764. More specifically, the court stated that parents are not the intended beneficiaries of any particular duty of care imposed by statute, nor are they legally required

to attend school. Id. The court then advanced three other considerations that militated in favor of the defendants. First, the plaintiff's attendance at the game was purely voluntary. Id. In other words, he was no different from any other member of the general public. Second, the court expressly stated that, in this particular legal context, parents are different from children in the context of determining the applicability of an exception to governmental immunity. Id., 764–65. Third, to allow this plaintiff to qualify for the exception would mean that all spectators at a public municipal event would constitute a class of foreseeable victims for these purposes, thus making the exception so broad that it would threaten to swallow the rule. . . . Id., 765. The court went on to say that the public policy of promoting parental involvement in a child's education did not justify extending the duty of care abrogating governmental immunity to parents attending school sponsored activities. Id., 766." (Internal quotation marks omitted.) *Durrant* v. *Board of Education,* supra, 96 Conn. App. 478 (*Schaller, J.,* dissenting).

The Appellate Court applied the factors set forth in these cases and made an initial determination from which all else followed. The court first examined whether, "if the child instead of the parent fell while leaving the after school program, the defendants would have been able to invoke the doctrine of governmental immunity." Id., 468. Rejecting the defendant's argument that "the student would also be excluded as a foreseeable victim because his attendance at the program was voluntary, not legally required"; id.; the Appellate Court concluded that "[i]t is not a large judicial leap to reason that the six year old student should be allowed to maintain an action against a municipality because, although not legally required to be on the premises after the school day had concluded, the child was legally present on the premises for the after school program by invita-

tion of the defendants." Id., 468–69; see General Statutes § 17b-737. According to the Appellate Court, "the six year old student [therefore] would be in an identifiable class of foreseeable victims had he been the one who was allegedly injured." *Durrant* v. *Board of Education*, supra, 96 Conn. App. 469. On the basis of this premise, the Appellate Court thereafter concluded that, because the plaintiff was obligated to accompany her child from school to home, consistent with her legal duties as a parent to care for her child, she too fell within the identifiable class of foreseeable victims. We disagree with the underlying premise of the Appellate Court's reasoning that the plaintiff's child was an identifiable member of a foreseeable class of persons, and, therefore, we reject that court's determination that the plaintiff was a member of an identifiable class of foreseeable victims subject to imminent harm for purposes of satisfying that exception to the qualified immunity of a municipal employee for discretionary acts.

Even if the Appellate Court properly determined that the puddle of water in the staircase had satisfied the imminent harm element of the identifiable person-imminent harm exception because the danger in the present case had been limited in duration; see *Burns* v. *Board of Education*, supra, 228 Conn. 650 (danger confined to duration of temporary icy condition in particularly " 'treacherous' " area of campus); and had been geographically confined; see *Purzycki* v. *Fairfield*, supra, 244 Conn. 109–10 (danger confined to particular hallway in which defendants knew that students were permitted to travel unmonitored for one-half hour period each day); the court's conclusion that the plaintiff's child fell within an identifiable class of foreseeable victims was improper. The Appellate Court failed to recognize the significance of the enactment of § 52-557n as it affected the common-law authority of trial courts to

determine when governmental immunity may be abrogated.

Section 52-557n, enacted in 1986; see Public Acts 1986, No. 86-338, § 13; specifically delineates circumstances under which municipalities and its employees can be held liable in tort and those under which they will retain the shield of governmental immunity. With respect to the latter, § 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Although the statute contains no express exceptions to governmental immunity for discretionary acts, this court has "assume[d], without deciding, that § 52-557n (a) (2) (B) codifies the common law" relating to circumstances in which immunity is abrogated.[8] *Considine* v. *Waterbury*, 279 Conn. 830, 854 n.14, 905 A.2d 70 (2006); see *Doe* v. *Petersen*, 279 Conn. 607, 614, 903 A.2d 191 (2006) ("§ 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages").

Prior to the enactment of § 52-557n, municipalities generally were immune for the discretionary acts of their officials. See *Shore* v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982). This court has explained the policy rationale for this immunity as follows: "Municipal officials are immunized from liability for negligence

---

[8] In examining the legislative history of § 52-557n, this court has concluded that the statute "was intended, in a general sense, both to codify and to limit municipal liability, but [the legislative history] reflects confusion with respect to precisely what part of the preexisting law was being codified, and what part was being limited." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 839 n.7, 905 A.2d 70 (2006).

arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 318–19, 907 A.2d 1188 (2006). Under its common-law authority, the court recognized limited exceptions to the discretionary acts immunity. See footnote 4 of this opinion. "Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force."[9] (Internal quotation marks omitted.) *Violano* v. *Fernandez*, supra, 319. As a result, under the common law, "[t]he 'discrete person/imminent harm' exception to the general rule of governmental immunity for employees engaged in discretionary activities ha[d] received very limited recognition in this state." *Evon* v. *Andrews*, supra, 211 Conn. 507.

---

[9] Compare *Evon* v. *Andrews*, supra, 211 Conn. 507–508 (foreseeable victim exception not satisfied in action brought against city officials after fire in multifamily apartment dwelling killed five people, officials immune for negligent failure to enforce various laws concerning safety of rental dwellings) and *Shore* v. *Stonington*, supra, 187 Conn. 157 (foreseeable victim exception not satisfied to waive immunity of police officer who failed to arrest driver, despite evidence of intoxication, and driver's vehicle later struck and killed plaintiff's decedent) with *Sestito* v. *Groton*, supra, 178 Conn. 528 (action against police officer who watched public disturbance involving group of approximately nine men without interfering until plaintiff's decedent was shot could be submitted to jury).

Since the codification of the common law under § 52-557n, this court has recognized that it is not free to expand or alter the scope of governmental immunity therein. Thus, in rejecting a plaintiff's invitation to abandon the distinction between ministerial and discretionary acts in favor of a different rule of liability, we recently stated: "Because the legislature has codified this distinction, we are bound by it. . . . Irrespective of the merits of the competing approach advocated by the plaintiff, [w]e must resist the temptation which this case affords to enhance our own constitutional authority by trespassing upon an area clearly reserved as the prerogative of a coordinate branch of government." (Citation omitted; internal quotation marks omitted.) *Violano* v. *Fernandez*, supra, 280 Conn. 327–28.

*Burns* was the first case decided by this court after the enactment of § 52-557n (a) (2) (B) to address the foreseeable victim/imminent harm exception that the court previously had recognized under its common-law authority. Although *Burns* and its progeny implicitly proceeded from the assumption that the statute had codified the common law in considering whether a class of victims could be foreseeable, the court's reasoning was consistent with the narrow common-law view of the exception. The only identifiable class of foreseeable victims that we have recognized for these purposes is that of schoolchildren attending public schools during school hours. "In determining that such schoolchildren were within such a class, we focused on the following facts: they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they were legally required to attend school rather than being there voluntarily; their parents were thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions." *Prescott* v. *Meri-*

*den,* supra, 273 Conn. 764; see also *Purzycki* v. *Fairfield,* supra, 244 Conn. 108–109; *Burns* v. *Board of Education,* supra, 228 Conn. 648–50.

In the present case, the plaintiff was not compelled statutorily to relinquish protective custody of her child. No statute or legal doctrine required the plaintiff to enroll her child in the after school program; nor did any law require her to allow her child to remain after school on that particular day. Contrast General Statutes §§ 10-157 and 10-220 (school boards and superintendents required to maintain schools for benefit of students); General Statutes §§ 10-184 and 10-220 (children statutorily compelled to attend school and parents statutorily obligated to send them to school). The plaintiff's actions were entirely voluntary, and none of her voluntary choices imposes an additional duty of care on school authorities pursuant to the *Burns* standards.[10]

We recognize that our state statutes condone and even encourage the use of public school facilities for the very purpose for which the plaintiff's child was in attendance at the school on the day of the plaintiff's fall.[11] See General Statutes § 17b-737 (allowing grants

[10] We are mindful that parents often need to place their children in after school care and that the program the plaintiff in the present case chose may have been the most convenient, least expensive and most beneficial, in view of the homework assistance component, of all her options. These factors did not, however, make her child's attendance compulsory.

[11] Additionally, we accept the validity of the plaintiff's after school program choice, particularly in light of the homework component, and we acknowledge the general proposition, implicit in the plaintiff's argument, that the law's policy choices should be informed by the incentives and disincentives created by any particular rule of law. See *DiLullo* v. *Joseph,* 259 Conn. 847, 854, 792 A.2d 819 (2002). We disagree, however, that we must extend the narrow exception involved in the present case in order to further the goals the plaintiff hopes to achieve. Certainly, other options could provide homework assistance attendant to after school care, and we cannot imagine that the plaintiff made or will make her choices in the best interest of her child based on the likelihood of recovery of damages in the event of someone's negligence. Cf. *Prescott* v. *Meriden,* supra, 273 Conn. 766 (recognizing benefits of parental involvement in child's extracurricular activities but rejecting contention "that any parent will choose to attend his or her child's school

to municipalities and boards of education "to encourage the use of school facilities for the provision of child day care services before and after school" and providing that "[t]he commissioner [of social services] may utilize available child care subsidies to implement the provisions of this section and encourage association and cooperation with the Head Start program established pursuant to section 10-16n [which allows the establishment of grant programs to assist local boards of education establishing extended day Head Start programs]"). There is a significant distinction, however, between a program in which participation is *encouraged* and one in which it is *compelled*. This distinction is paramount in light of the fact that an interpretation that would embrace such voluntary activities would constitute an expansion in abrogation of the common law, which we generally eschew in the absence of an express directive. This court often has cautioned that, "[w]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003); *Yale University School of Medicine* v. *Collier*, 206 Conn. 31, 36–37, 536 A.2d 588 (1988).

We disagree with the Appellate Court majority that the legislature manifested an intent to abrogate the

event—athletic or otherwise—because he or she may be able to recover in negligence against school officials if he or she is injured during that attendance, and we do not think that any parent so inclined to attend such an event will decline to do so because he or she may not be able to secure such a recovery").

common law in these circumstances by way of §17b-737; see footnote 3 of this opinion; which provides in relevant part that, "[i]n order to qualify for a grant, a municipality, board of education or child care provider . . . shall agree to provide liability insurance coverage for the program." Even if we were to assume arguendo that the legislature possibly could have intended its conditioning the receipt of grants under § 17b-737 on municipalities or boards of education having obtained liability insurance coverage to expand implicitly the foreseeable class of victims exception to governmental immunity; see *Sestito* v. *Groton,* supra, 178 Conn. 527–28; the language in § 17b-737 is insufficient to achieve that end. See *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission,* 267 Conn. 192, 209, 837 A.2d 748 (2004) ("[w]e previously have noted that zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms" [internal quotation marks omitted]). Nothing in that statutory language evidences the clear, express intent necessary to abrogate the common law by expanding substantially the exception to governmental immunity for discretionary acts.

More likely, as Judge Schaller noted, "[t]he liability insurance requirement serves to protect against various types of risks associated with operating child care services. For example, such insurance would provide coverage if a child were injured and came within one of the recognized exceptions to governmental immunity." *Durrant* v. *Board of Education,* supra, 96 Conn. App. 485 n.8 (*Schaller, J.,* dissenting). Additionally, because municipalities are liable for an employee's negligent performance of ministerial acts, and for negligence in connection with money-making activities and nuisances; see General Statutes § 52-557n (a) (1); the liability insurance requirement for municipalities and boards

of education imposed by § 17b-737 likely is intended to address these situations.

The judgment of the Appellate Court is reversed and the case is remanded with direction to affirm the judgment of the trial court.

In this opinion ROGERS, C. J., and BORDEN and VERTEFEUILLE, Js., concurred.

NORCOTT, J., with whom PALMER and ZARELLA, Js., join, dissenting. I believe that the majority opinion in this case misreads and misapplies the line of governmental immunity decisions by this court starting with *Burns* v. *Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994), and culminating with our most recent opinion in *Prescott* v. *Meriden*, 273 Conn. 759, 873 A.2d 175 (2005). In my view, the "evolving expectations of a maturing society"; *Burns* v. *Board of Education*, supra, 647; require us to conclude that young children attending day care programs held at public schools pursuant to General Statutes § 17b-737,[1] and by associa-

---

[1] General Statutes § 17b-737 provides: "The Commissioner of Social Services shall establish a program, within available appropriations, to provide grants to municipalities, boards of education and child care providers to encourage the use of school facilities for the provision of child day care services before and after school. In order to qualify for a grant, a municipality, board of education or child care provider shall guarantee the availability of a school site which meets the standards set by the Department of Public Health in regulations adopted under sections 19a-77, 19a-79, 19a-80 and 19a-82 to 19a-87a, inclusive, and shall agree to provide liability insurance coverage for the program. Grant funds shall be used by the municipality, board of education or child care provider for the maintenance and utility costs directly attributable to the use of the school facility for the day care program, for related transportation costs and for the portion of the municipality, board of education or child care provider liability insurance cost and other operational costs directly attributable to the day care program. The municipality or board of education may contract with a child day care provider for the program. The Commissioner of Social Services may adopt regulations, in accordance with the provisions of chapter 54, for purposes of this section. The commissioner may utilize available child care subsidies to implement the provisions of this section and encourage association and

tion, their parents or parent-designees picking them up from such programs, are an identifiable class of persons subject to imminent harm. This deprives the defendants[2] of their governmental immunity under General Statutes § 52-557n for the performance of their discretionary functions in maintaining the school.[3] Thus, the Appellate Court properly concluded, in a thoughtful and well reasoned majority opinion, that the plaintiff, Sharon Durrant, who was injured in a fall on a back staircase while picking up her son and nephew from an after school day care program held at West Middle School in Hartford, was a member of an identifiable class of persons subject to imminent harm. See generally *Durrant* v. *Board of Education,* 96 Conn. App. 456, 457–58, 900 A.2d 608 (2006). Accordingly, I respectfully dissent from the majority's decision reversing the judgment of the Appellate Court.

cooperation with the Head Start program established pursuant to section 10-16n."

[2] "The defendants are Anthony Amato, the superintendent of Hartford public schools; the board of education of the city of Hartford; Fran DiSiores, the principal of West Middle School, a Hartford public school; and Rick Deschenes, the director of maintenance of West Middle School." *Durrant* v. *Board of Education,* 96 Conn. App. 456, 457 n.1, 900 A.2d 608 (2006).

[3] It is well settled that a "municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . . The only exception to a municipal employee's qualified immunity for discretionary acts that is relevant to the present case is where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person [or member of an identifiable class of foreseeable persons] to imminent harm . . . ." (Citation omitted; internal quotation marks omitted.) *Prescott* v. *Meriden,* supra, 273 Conn. 763; see also General Statutes § 52-557n (a) (2) ("[e]xcept as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . [B] negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law").

.

At the outset, I note my complete agreement with the majority's focus on the plaintiff's six year old son, rather than on the plaintiff alone, in its determination of whether she was a member of an identifiable class of persons subject to imminent harm. The plaintiff's legal fate necessarily is linked to her son because, as common sense dictates, any six year old child should have adult supervision during his or her travel home from school.[4]

Thus, my disagreement begins with the majority's rejection of the "underlying premise of the Appellate Court's reasoning that the plaintiff's child was an identifiable member of a foreseeable class of persons . . . ."[5] The majority, citing *Prescott* v. *Meriden,* supra, 273 Conn. 764, notes correctly that "[t]he only identifiable class of foreseeable victims that we have recognized for these purposes is that of schoolchildren attending public schools during school hours." The majority, however, declines to extend this class further because, unlike during the regular school day, "the plaintiff was not compelled statutorily to relinquish protective custody of her child" or "enroll [him] in the after school program" or to "allow her child to remain after school on that particular day. . . . The plaintiff's actions were entirely voluntary, and none of her voluntary choices

[4] I am not troubled by the argument of the amicus curiae Connecticut Association of Boards of Education that this premise conceivably increases municipalities' exposure by enlarging the protected class even further from parents to other relatives, friends or babysitters. Indeed, the amicus notes that the plaintiff in this case was picking up her nephew in addition to her own child when she was injured. The municipalities' overall exposure should not change significantly because, if a parent were available to pick up a child from school, there would be no need to send someone in his or her stead. Put differently, I see no realistic possibility that the overall number of individuals actually going to pick children up from school or school programs will *increase.*

[5] Like the majority, I too assume that the puddle in the stairwell satisfies the imminent harm element of the exception because it presented a danger that was limited in duration.

imposes an additional duty of care on school authorities pursuant to the *Burns* standards." (Citations omitted.) In my view, the majority's conclusion, which is based on an inappropriately narrow reading of the governing case law, inequitably penalizes Connecticut citizens who have no real choice but to avail themselves of the day care programs offered by our state's public schools pursuant to § 17b-737.

My analysis begins with the *Burns* standards also relied upon by the majority. In that case, this court concluded that a fourteen year old student, injured at a public school during the school day, was a member of a foreseeable class of victims owed a special duty of care by the superintendent of schools, thus abrogating the defendants' governmental immunity. *Burns* v. *Board of Education*, supra, 228 Conn. 650. We noted that "[t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . Foreseeability in this context is a flexible concept, and may be supported by reasonable reliance, impeding others who might seek to render aid, statutory duties, property ownership or other factors. . . . *Moreover, just as the doctrine of governmental immunity and its exceptions are the product of the policy considerations that aid the law in determining whether the interests of a particular type are entitled to protection . . . so may evolving expectations of a maturing society change the harm that may reasonably be considered foreseeable. . . .*

"In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have

also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 647–48.

In *Burns*, this court applied these factors and "note[d] that statutory and constitutional mandates demonstrate that school children attending public schools during school hours are intended to be the beneficiaries of certain duties of care. Statutes describe the responsibilities of school boards and superintendents to maintain and care for property used for school purposes. The supervisory responsibilities of the superintendent of schools are not automatically abrogated by the designation of a head custodian to undertake immediate responsibility for the salting and sanding of the school campus on any particular day.

"Statutes also describe the responsibilities of school children to attend school. The presence of the plaintiff child on the school premises where he was injured was not voluntary. As a fourteen year old at the time of the accident, he was statutorily compelled to attend school and to obey school rules and discipline formulated and enforced pursuant to statute. His corresponding entitlement to a public education has constitutional underpinnings in this state.

"The result of this network of statutory and constitutional provisions is that the superintendent of schools bears the responsibility for failing to act to prevent the risk of imminent harm to school children as an identifiable class of beneficiaries of his statutory duty of care. *At least* during school hours on school days,

when parents are statutorily compelled to relinquish protective custody of their children to a school board and its employees, the superintendent has the duty to protect the pupils in the board's custody from dangers that may reasonably be anticipated. . . . As a matter of policy, *this conclusion comports with our case law that has traditionally recognized that children require special consideration when dangerous conditions are involved.*" (Citation omitted; emphasis added.) Id., 648–50; see also *Purzycki* v. *Fairfield,* 244 Conn. 101, 110, 708 A.2d 937 (1998) (eight year old child injured in hallway while traveling from lunchroom to playground was foreseeable victim).

The Appellate Court majority correctly observes that "*Burns* does not limit its holding to apply only to children attending public school during the regular school day. Although *Burns* decided that such children were a class of foreseeable victims to whom the defendant owed a duty, it did not state that such children were the only class of victims to which the defendant could owe a duty." *Durrant* v. *Board of Education,* supra, 96 Conn. App. 469 n.9. Indeed, *Burns* uses the inclusive phrase "[a]t least" in describing its applicability to children at school during regular school hours. *Burns* v. *Board of Education,* supra, 228 Conn. 649. Thus, I agree with the Appellate Court majority that there is no principled reason why that class of foreseeable victims cannot be expanded beyond the "regular school day" to children who have stayed at school to attend a day care program held there.[6] *Durrant* v. *Board of Education,* supra, 469 n.9.

---

[6] The majority argues that "[t]he Appellate Court [majority] failed to recognize the significance of the enactment of § 52-557n as it affected the common-law authority of trial courts to determine when governmental immunity may be abrogated." The majority notes that this court has assumed, without deciding, that § 52-557n, " 'codifies the common law' " with respect to the abrogation of governmental immunity, and that this court "is not free to expand or alter the scope of governmental immunity" since the enactment of that statute. I disagree with the majority's apparent conclusion that we

On the basis of the tender age of the plaintiff's son, the majority and I already have concluded that the plaintiff's legal fate is dependent on whether he was required to be at the school at the time in question. The majority, however, has failed to consider adequately all of the *Burns* factors in concluding that the legal status of the plaintiff's son changed with respect to the defendants' governmental immunity when the school bell sounded at the end of the day and he transitioned to the day care and homework program. A careful reading of *Burns* reveals that the compulsion factor relied on so heavily by the majority is only one of multiple disjunctive guideposts to consider along with: (1) "the imminency of any potential harm"; (2) "the likelihood that harm will result from a failure to act with reasonable care"; (3) "the identifiability of the particular victim"; (4) "whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts"; (5) "the seriousness of the injury threatened"; (6) "the duration of the threat of injury"; and (7) "whether the persons at risk had the opportunity to protect themselves from harm."[7] *Burns* v. *Board of Education,*

are statutorily precluded from recognizing new classes of potential victims. A conclusion that the plaintiff, and her son, fall within the relevant class of foreseeable victims does not expand or alter the scope of the common law in derogation of § 52-557n. Put differently, the Appellate Court did not purport to change the applicable common-law rule governing the foreseeable victim/imminent harm exception in the present case, but, just like our decision in *Burns*, which also came subsequent to the enactment of the statute, merely *applied the existing common-law exception* to a new factual situation. Had the legislature wished at any point to restrict the application of that exception only to "schoolchildren on premises during regular school hours," it could have amended the comprehensively drafted immunity statute to do so.

[7] Unlike the majority, I believe that our decision in *Prescott* v. *Meriden,* supra, 273 Conn. 759, does not preclude the plaintiff from recovering in this case solely because of her status as a parent. In *Prescott,* we concluded that the plaintiff, who was injured in the stands on a rainy day while attending a Thanksgiving Day high school football game in which his son was playing, was not a member of a class of foreseeable victims subject to imminent harm. Id., 761–63. Distinguishing our decisions in *Burns* and *Purzycki,* we emphasized that "the plaintiff's presence at the game was purely voluntary.

supra, 228 Conn. 647–48. When I review the *Burns* fac-
tors, the *only* factor that changes is whether the child's
attendance was, in some way, legally compulsory, as
school no longer was in regular session, which takes
him out of the ambit of the mandatory education stat-
utes, General Statutes §§ 10-184 and 10-220.[8] See also

He was not compelled to attend by any statute, regulation or other legal command. *In this respect, he was no different from any of the other specta-tors*—whether relatives or friends of the team members, other students at the respective schools, teachers and other school staff members, or simply fans of high school football interested enough to brave any weather to watch a traditional Thanksgiving Day game. Thus, the plaintiff was simply like any other member of the public attending the game. Second, the plaintiff was entitled to no special consideration of care from the school officials because of his status as a parent. Thus, he was unlike the schoolchildren in both *Burns* and *Purzycki*. Third, we have characterized the classes of foreseeable victims as narrowly defined . . . . Recognizing the plaintiff as establishing a cognizable class of foreseeable victims, namely, parents of students on the team, would be contrary to this characterization, especially given the close resemblance of the plaintiff as spectator to all of the other members of the public similarly situated. *Moreover, to do so would mean that all spectators at a public municipal event would constitute a class of foresee-able victims for these purposes, thus making the exception so broad that it would threaten to swallow the rule.*" (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 764–65.

The plaintiff in the present case is distinguishable from the parent in *Prescott*. In that case, we pointed out that any member of the public was welcome to enter the football stands and watch the game. Id., 764. In contrast, in this case, only a very limited group of people were welcome to come to the back entrance of the school building to pick up children attending programs there. Moreover, as both the majority and I agree, the plaintiff had no choice but to pick up her child from the school at the end of the day care program because of his young age, unlike a parent who chooses to attend a high school football game as a spectator.

[8] General Statutes § 10-184 provides: "All parents and those who have the care of children shall bring them up in some lawful and honest employment and instruct them or cause them to be instructed in reading, writing, spelling, English grammar, geography, arithmetic and United States history and in citizenship, including a study of the town, state and federal governments. *Subject to the provisions of this section and section 10-15c, each parent or other person having control of a child five years of age and over and under eighteen years of age shall cause such child to attend a public school regularly during the hours and terms the public school in the district in which such child resides is in session, unless such child is a high school graduate or the parent or person having control of such child is able to*

footnote 10 of this dissenting opinion. As a six year old child, he remained subject to the same considerations that we concluded required protection for the children at issue in *Burns* and *Purzycki*, including a "limited time period and limited geographical area," a "temporary condition," and a risk of harm that was "significant and foreseeable," given the presence of the children in the school. *Purzycki* v. *Fairfield*, supra, 244 Conn. 110. Once enrolled in the day care program, he also remained obligated to follow the rules set down by the defendants, a consideration that we noted in *Burns*. See *Burns* v. *Board of Education*, supra, 649. Just as we have noted that "children require special consideration when dangerous conditions are involved"; id., 650; the New Jersey Supreme Court, in concluding that school officials' duty of care and supervision extends to dismissal time, recently stated that "[y]ounger children, in particular are unable to understand and appreciate the

*show that the child is elsewhere receiving equivalent instruction in the studies taught in the public schools.* The parent or person having control of a child sixteen or seventeen years of age may consent, as provided in this section, to such child's withdrawal from school. Such parent or person shall personally appear at the school district office and sign a withdrawal form. The school district shall provide such parent or person with information on the educational options available in the school system and in the community. The parent or person having control of a child five years of age shall have the option of not sending the child to school until the child is six years of age and the parent or person having control of a child six years of age shall have the option of not sending the child to school until the child is seven years of age. The parent or person shall exercise such option by personally appearing at the school district office and signing an option form. The school district shall provide the parent or person with information on the educational opportunities available in the school system." (Emphasis added.)

General Statutes § 10-220 provides in relevant part: "(a) Each local or regional board of education shall . . . cause each child five years of age and over and under eighteen years of age who is not a high school graduate and is living in the school district to attend school in accordance with the provisions of section 10-184, and shall perform all acts required of it by the town or necessary to carry into effect the powers and duties imposed by law. . . ."

perils that may threaten their safe being. . . . Indeed, children have a known proclivity to act impulsively without thought of the possibilities of danger, and it is precisely that lack of mature judgment which makes supervision so vital."[9] *Jerkins* v. *Anderson*, 191 N.J. 285, 296–97, 922 A.2d 1279 (2007) (nine year old child struck by car when walking off school grounds without adult supervision after early dismissal). The ringing of the 3 o'clock bell at the end of the school day does not magically bestow a young child with maturity and sound judgment, and does not, therefore, deprive that child of the "special considerations" to which he is entitled under the law. *Burns* v. *Board of Education*, supra, 650.

The majority, in stating that "[t]here is a significant distinction . . . between a program in which participation is encouraged and one in which it is compelled,"[10]

[9] As the Appellate Court aptly noted, "we consider it probable that more six year olds leaving the building, having attended an after school program, would be injured if no parent escorted them than if parents accompanied them out of the building. Thus, if the six year old was part of an identifiable class but his parent was not, more litigation rather than less would ensue." *Durrant* v. *Board of Education*, supra, 96 Conn. App. 469–70 n.10.

[10] I disagree with the majority's apparent reading of *Burns*, a majority opinion in which I joined, as standing for the proposition that municipalities' governmental immunity is abrogated with respect to children attending school because of the compulsory nature of *public* education. In *Burns*, this court stated only that "[s]tatutes also describe the responsibilities of school children to attend *school. The presence of the plaintiff child on the school premises where he was injured was not voluntary.* As a fourteen year old at the time of the accident, *he was statutorily compelled to attend school* and to obey school rules and discipline formulated and enforced pursuant to statute." (Emphasis added.) *Burns* v. *Board of Education*, supra, 228 Conn. 649. Although parents and guardians are statutorily obligated to cause their children "to be instructed in reading, writing, spelling, English grammar, geography, arithmetic and United States history and in citizenship, including a study of the town, state and federal governments"; General Statutes § 10-184; they are not required to satisfy that requirement by sending them to public school. In accordance with well established constitutional restrictions, § 10-184 explicitly permits parents to provide "elsewhere" for "equivalent instruction in the studies taught in the public schools" by, for example, sending children to private school or home schooling them appropriately. Thus, parents are compelled only to educate their children, and not to send them to a particular type of school.

does not adequately consider the import of § 17b-737, which made the provision of before and after school day care a state endorsed and funded governmental function, at least in part. In enacting § 17b-737, which provides for state grants "to municipalities, boards of education and child care providers to encourage the use of school facilities for the provision of child day care services before and after school," the legislature recognized a shortage of quality day care for children, despite its economic and social significance.[11] While introducing the bill to the human services committee, Representative Frank Esposito, Jr., cited the increasing number of working and single mothers with young children, and stated that "the rise in the number of working mothers will and has had a tremendous effect on our children; our greatest resource. The desire for quality day care services for our children is becoming an ever increasing need as more and more mothers of school age children enter the work force." Conn. Joint Standing Committee Hearings, Human Services, 1986 Sess., p. 37; see also id., pp. 69–70, remarks of Elizabeth Shaw, Christian Community Action of New Haven (noting that quality day care is "critical service that many of our families find lacking in their efforts to find and keep jobs"). Representative Esposito further noted the problems of "availability, high tuition costs and transportation" with respect to day care, and the need for municipalities to provide school facilities, either run by themselves or with the assistance of private providers, to add to the supply of quality facilities. Id., p. 38.

---

[11] See 29 H.R. Proc., Pt. 20, 1986 Sess., p. 7581, remarks of Representative Peter A. Nystrom (Describing the "basic concepts" of the bill, including "increasing the availability of day care services. We're hoping to make it more affordable to individuals who need that service. We're also hoping to expand parental choice in the type of day care service that they would choose for their child."); see also id., p. 7616, remarks of Representative Nystrom (noting that grants program was intended to provide "before and after school day care to address the problem of latch key children").

Indeed, public supporters of § 17b-737 emphasized that it was particularly beneficial to children to hold these programs in the schools.[12] See id., p. 61, remarks of Nancy Sconyers, Connecticut Association for Human Services ("[S]trong[ly]" supporting school based programs because of "physical and psychological risks involved in children being left alone after school. Stories abound of children using libraries, the school yard, or a neighborhood store to while away the hours after school, or of lonely and fearful children being virtual prisoners in their homes, told not to go outside or to unlock the doors until their parents return."); see also id., p. 80, remarks of Martha Leonard, a physician representing the Connecticut Chapter of the American Academy of Pediatrics ("the idea of having grants to municipalities so that they can provide some kind of care for children within the schools, before and after the school hours is an important way of making care for these children more affordable and preventing some of the tragedies that happen when children are home alone, fires are set"). Section 17b-737, and the history behind its enactment, demonstrates our legislature's

---

[12] I find somewhat troubling two rather dismissive statements contained in the majority opinion. First, in footnote 10, the majority states that it is "mindful that parents often need to place their children in after school care and that the program the plaintiff in the present case chose may have been the most convenient, least expensive and most beneficial, in view of the homework assistance component, of all her options. These factors did not, however, make her child's attendance compulsory." In footnote 11, the majority then posits that "other options could provide homework assistance attendant to after school care, and we cannot imagine that the plaintiff made or will make her choices in the best interest of her child based on the likelihood of recovery of damages in the event of someone's negligence."

Although the majority's observation likely is correct, its opinion nevertheless penalizes those citizens who may well have the fewest options, namely, people who have no choice but to rely on government provided before and after school programming for quality child care. Put differently, the majority opinion has its harshest effect on disadvantaged, frequently single, parents, to whom enrollment in after school programs sponsored by municipalities may not be a choice, but a practical and economic necessity.

view, as a matter of public policy, of the importance of quality day care for all of our state's citizens, and of the need for governmental involvement to provide those services adequately.

Moreover, as the Appellate Court majority aptly points out, the legislature apparently realized that providers of after school programs might face liability issues, presumably because of the risks attendant to caring for young children, because it conditioned "the receipt of grants under § 17b-737 on municipalities or boards of education obtaining liability insurance coverage. Liability insurance protects an insured from the payment of funds due in the event of an insured's negligence. . . . If the legislature believed that § 52-557n exempted those in the category of the defendants from liability arising out of programs established pursuant to § 17b-737, there would be no reason for the legislature to have provided for liability insurance in the latter statute." (Citation omitted; internal quotation marks omitted.) *Durrant* v. *Board of Education*, supra, 96 Conn. App. 471. In my view, the majority opinion takes a significant step toward rendering this legislative language surplusage because, if children attending day care programs, let alone their parents, are not in the class of persons subject to imminent harm, the need for day care providers to carry liability insurance is significantly reduced.

I agree with the Appellate Court majority that "there is a direct connection between the reason for the plaintiff's presence and the statutes of Connecticut that provide for the public purpose and establishment of after school programs," and that our state's statutes "condone and encourage the use of public school facilities for the very purpose that the plaintiff's child was in attendance at West Middle School on the day of the plaintiff's fall." Id., 470. Under my reading of this court's previous decisions in this field, I conclude that young

children attending day care programs held at public schools pursuant to § 17b-737 and their parents or parent-designees picking them up from such programs, are an identifiable class of persons subject to imminent harm, and the defendants were not, therefore, entitled to governmental immunity for the discretionary function of maintaining the stairwell of the school. The judgment of the Appellate Court should, therefore, be affirmed. Accordingly, I respectfully dissent.